**PELTON GRAHAM LLC**
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.peltongraham.com

*Attorneys for Plaintiffs and the putative*
*FLSA Collective and Class*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **BERNARDINO SIERRA and REGINO SOLIS, Individually and on Behalf of All Others Similarly Situated,**<br><br>                              **Plaintiff,**<br><br>-**against**-<br><br>**JOAN BERTOLI INC. d/b/a EHRLICH'S WINES & SPIRITS, 1996 CORP. d/b/a INTERNATIONAL WINES, JOAN BERTOLI, KATIA PHILLIPS, and PATRICK PHILLIPS, Jointly and Severally,**<br><br>                              **Defendants.** | **CLASS & COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

        Plaintiffs Bernardino Sierra ("Sierra") and Regino Solis ("Solis" and, with Sierra, the

Plaintiffs"), individually and on behalf of all others similarly situated, as collective and class

representatives, upon personal knowledge as to themselves and upon information and belief as to

other matters, allege as follows:

## NATURE OF THE ACTION

1.     Plaintiffs worked for Defendants as floor employees at their two (2) wine stores located in Manhattan, New York. During their employment with Defendants, Plaintiffs were paid at straight-time hourly rates at or below the applicable minimum wage for all hours worked, including hours beyond forty (40) hours per week.

2.     Plaintiffs bring this action to recover unpaid minimum wages and overtime premium pay owed to them pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq.* Plaintiffs also bring claims for unpaid spread of hours premiums, failure to timely pay all wages owed and for failure to provide proper wage notices and wage statements pursuant to NYLL §§ 190 *et seq.* and the supporting regulations.

3.     Plaintiffs bring their FLSA claims on behalf of themselves and all other similarly situated employees of Defendants and their NYLL claims on behalf of themselves and a Federal Rule of Civil Procedure 23 class of all non-exempt employees working for Defendants during the relevant NYLL limitations period.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

5.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants' business is located in this district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

6.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

7.     On March 20, 2020, New York Governor Andrew M. Cuomo signed Executive Order 202.8 in an effort to stem the spread of COVID-19, which tolls for thirty (30) days "any specific time limit[s] for the commencement, filing, or service of any legal action, notice, motion or other process or proceeding" under any New York State laws or court procedural rules. The thirty (30)-day tolling period began on March 20, 2020 and continued until April 19, 2020. On April 7, 2020, Governor Cuomo signed Executive Order 202.14, which extended the tolling period to May 7, 2020. Subsequently, on May 7, 2020, Governor Cuomo issued Executive Order 202.28, tolling all statutes of limitations for an additional thirty (30) days through June 6, 2020. On June 6, 2020, Governor Cuomo issued Executive Order 202.38, tolling all statutes of limitations until July 6, 2020. On July 7, 2020, Governor Cuomo issued Executive Order 202.48 tolling all statutes of limitations until August 5, 2020. On August 5, 2020, Governor Cuomo issued Executive Order 202.55, which tolled all statutes of limitations until September 4, 2020. On September 4, 2020, Governor Cuomo signed Executive Order 202.60, which extended the tolling period an additional thirty (30) days to October 4, 2020. On October 4, 2020, Governor Cuomo issued Executive Order 202.67, which extended the tolling period to November 3, 2020. In total, the Executive Orders set forth herein provided for a toll of two hundred and twenty-eight (228) days.

## THE PARTIES

**Plaintiffs:**

8.     Plaintiff Bernardino Sierra was, at all relevant times, an adult individual residing in Bronx County, New York.

9.     Plaintiff Regino Solis was, at all relevant times, an adult individual residing in

Bronx County, New York.

10.     Throughout the relevant time period, Plaintiffs performed work for Defendants at Ehrlich's Wines & Spirits, located at 222 Amsterdam Avenue, New York, New York 10023 ("Ehrlich's Wines") and International Wines & Spirits, located at 2903 Broadway, New York, New York 10025 ("International Wines").

11.     Plaintiffs consent in writing to be party to this action, pursuant to 29 U.S.C. § 216(b), and their consent forms are attached hereto.

**Defendants:**

12.     Joan Bertoli Inc. is a New York corporation doing business as "Ehrlich's Wines & Spirits", with its principal place of business at 222 Amsterdam Avenue, New York, New York 10023.

13.     According to the New York State Department of State, Division of Corporations, Joan Bertoli Inc. was registered on August 26, 1997.

14.     1996 Corp. (together with Joan Bertoli Inc., the "Corporate Defendants") is a New York corporation doing business as "International Wines & Spirits" with its principal place of business at 2903 Broadway, New York, New York 10025.

15.     According to the New York State Department of State, Division of Corporations, 1996 Corp. was registered on February 16, 1996.

16.     At all relevant times, each of the Corporate Defendants was and continues to be a "corporation engaged in commerce" within the meaning of the FLSA.

17.     Upon information and belief, Joan Bertoli is an owner and operator of the Corporate Defendants who is actively involved in the management of Ehrlich's Wines and International Wines.

4

18.     Upon information and belief, <u>Katia Phillips</u> is an owner and operator of the Corporate Defendants who is actively involved in the management of Ehrlich's Wines and International Wines.

19.     Upon information and belief, <u>Patrick Phillips</u> (collectively with Joan Bertoli and Katia Phillips, the "Individual Defendants") is an owner and operator of the Corporate Defendants who is actively involved in the management of Ehrlich's Wines and International Wines.

20.     The Individual Defendants maintained operational control over the Corporate Defendants by overseeing business operations, supervising employees, determining the wages and compensation of employees, establishing the schedule of employees, maintaining employee records, and through possessing the authority to hire and fire employees, including Plaintiffs.

21.     The Individual Defendants participated in the day-to-day operations of the Corporate Defendants and acted intentionally in their direction and control of Plaintiffs and the Defendants' other similarly situated employees and are each an "employer" pursuant to the FLSA, 29 U.S.C. § 203(d), 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and is jointly and severally liable with the Corporate Defendant.

22.     At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

23.     At all relevant times, Defendants employed, and/or continue to jointly employ, Plaintiff and each of the Collective Action members within the meaning of the FLSA.

24.     At all relevant times, Plaintiffs, the opt-in plaintiffs, and the Class Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

25.     Upon information and belief, at all relevant times, the Corporate Defendants have

each had gross revenues in excess of $500,000.00.

## FLSA COLLECTIVE ACTION ALLEGATIONS

26.     Pursuant to 29 U.S.C. §§ 206, 207 & 216(b), Plaintiffs bring their First and Second

Causes of Action as a collective action under the FLSA on behalf of themselves and the following

collective:

> All persons employed by Defendants as non-management
> employees at any time since June 30, 2018, and through the entry of
> judgment in this case (the "Collective Action Period") who worked
> at Ehrlich's Wines and/or International Wines (the "Collective
> Action Members").

27.     A collective action is appropriate in this circumstance because Plaintiffs and the

Collective Action Members are similarly situated, in that they were all subjected to Defendants'

illegal policies of failing to pay minimum wage for all hours worked and failing to pay overtime

premiums for work performed in excess of forty (40) hours each week.   As a result of these

policies, Plaintiffs and the Collective Action Members did not receive the legally-required

minimum wages for all hours worked and overtime premium payments for all hours worked in

excess of forty (40) hours per week.

28.     Plaintiffs and the Collective Action Members have substantially similar job duties

and are paid pursuant to a similar, if not the same, payment structure.

## FED. R. CIV. P. 23 CLASS ACTION ALLEGATIONS

29.     Pursuant to the NYLL, Plaintiffs bring their Third through Eighth Causes of Action

under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following

class:

> All persons employed by Defendants as non-management employees
> at any time since November 14, 2014, and through the entry of
> judgment in this case (the "Class Period") who worked at Ehrlich's
> Wines and/or International Wines (the "Class Members").

30.    <u>The Class Members are readily ascertainable</u>. The number and identity of the Class Members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Fed. R. Civ. P. 23.

31.    <u>The Class Members are so numerous that joinder of all members is impracticable</u>.

32.    Upon information and belief, there are in excess of forty (40) Class Members.

33.    <u>The questions of law and fact common to the Class predominate over any questions solely affecting the individual members of the Class</u>. These common questions include, but are not limited to:

      a.    whether Defendants employed Plaintiffs and the Class Members within the meaning of the NYLL;

      b.    whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and the Class Members;

      c.    whether Defendants failed and/or refused to pay Plaintiffs and the Class Members at least minimum wage for all hours worked each workweek;

      d.    whether Defendants failed and/or refused to pay Plaintiffs and the Class Members overtime premiums for hours worked in excess of forty (40) hours per workweek;

      e.    whether Defendants failed to pay Plaintiffs and the Class Members spread of hours premiums on days when they worked in excess of ten (10) hours;

      f.    whether Defendants failed to pay Plaintiffs and the Class Members all wages owed for work in a given workweek within seven (7) days after the end of the workweek;

g.  whether Defendants failed to provide Plaintiffs and the Class Members with a proper statement of wages with every wage payment as required by the NYLL;

h.  whether Defendants failed to provide proper wage notice to Plaintiffs and Class Members at the beginning of their employment and/or on February 1 of each year as required by the NYLL;

i.  whether Defendants' failure to properly pay Plaintiffs and the Class Members lacked a good faith basis; and

j.  whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

34.  Plaintiffs' claims are typical of the Class Members' claims. Plaintiffs, like all Class Members, worked for Defendants pursuant to their corporate policies. Plaintiffs, like all Class Members, were, *inter alia*, not paid minimum wage for all hours worked, overtime premium pay for hours worked over forty (40) hours in a given workweek or spread of hours premiums for workdays that exceeded ten (10) hours; were not paid all wages owed to them within seven (7) days after the end of a given workweek; and were not provided proper wage statements and wage notices. If Defendants are liable to Plaintiffs for the claims enumerated in this Complaint, they are also liable to all Class Members.

35.  Plaintiffs and their Counsel will fairly and adequately represent the Class. There are no conflicts between Plaintiffs and the Class Members, and Plaintiffs bring this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover their own damages.

36.  Plaintiffs' counsel are experienced class action litigators who are well-prepared to

8

represent the interests of the Class Members.

37.    <u>A class action is superior to other available methods for the fair and efficient adjudication of this litigation</u>.

38.    Defendants are sophisticated parties with substantial resources. The individual plaintiff lacks the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

39.    The individual members of the Class have no interest or capacity to bring separate actions; Plaintiffs are unaware of any other litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## **STATEMENT OF FACTS**

### **Defendants' Wine and Spirits Retail Business**

40.    Upon information belief, Defendants have been in the wine and spirits retail business at both Ehrlich's Wines and International Wines for over twenty (20) years.

41.    In addition to Ehrlich's Wines and International Wines, upon information and belief, Defendants have operated Diplomat Wines, Ambassador Wines NYC, and Serendipity Wines and Spirits, (now closed), all of which are wine and spirits retail stores located in Manhattan, New York.

42.    Upon information and belief, and according to the website of Ehrlich's Wines at https://ehrlichwinesnyc.com, Ehrlich's Wines is open Sundays from 12:00 pm to 9:00 pm, Mondays from 9:00 am to 8:00 pm, Tuesdays through Thursdays from 9:00 am to 9:00 pm, and Fridays from 9:00 am to 10:00 pm, and provides deliveries during most of these open hours.

43.    Upon information and belief, and according to the website of International Wines

at https://internationalwinesnyc.com/, International Wines is open Sundays from 12:00 pm to 8:00 pm, Mondays through Wednesdays from 10:00 am to 9:00 pm, and Thursdays through Saturdays from 10:00 am to 10:00 pm, and provides deliveries during most of these open hours.

44. According to the New York Department of State, Division of Corporations, Defendant Bertoli is the Chief Executive Officer of Joan Bertoli Inc.

45. The websites of Ehrlich's Wines, https://ehrlichwinesnyc.com, and International Wines, https://internationalwinesnyc.com/, are extremely similar and use similar designs, identical menus and images and refer to the same returns and refund policy page, https://assets.cityhive.net/terms/customers/return_and_refund_policy.html.

46. Upon information and belief, both Ehrlich's Wines and International Wines were founded by Defendant Bertoli, and are owned, operated and managed by the Individual Defendants.

47. Upon information and belief, Defendants Patrick Phillips and Katia Phillips are frequently present at both Ehrlich's Wines and International Wines, where they oversee the day-to-day business operations of the liquor stores, supervise employees and managers, work with vendors, pay employees, and take active roles in ensuring that the stores are run in accordance with Defendant Bertoli's procedures and policies.

48. Upon information and belief, Defendant Bertoli is in regular communication with Defendants Patrick Phillips and Katia Phillips regarding the operations of the stores, including personnel and payroll practices, and provides checks to be paid to vendors of Ehrlich's Wines and International Wines.

49. Upon information and belief, Defendant Patrick Phillips manages both Ehrlich Wines and International Wines as well as Diplomat Wines and Ambassador Wines NYC.

50.     Upon information and belief, Defendant Bertoli hired Defendants Patrick Phillips and Katia Phillips, among other managers, to serve as her daily management employees in her absence.

51.     Upon information and belief, at all relevant times, the Individual Defendants have had power over payroll and personnel decisions at Ehrlich Wines and International Wines, including the power to hire and fire employees, set their wages, retain time and/or wage records, and otherwise control the terms and conditions of their employment.

52.     Upon information and belief, the Individual Defendants own, operate and manage Ehrlich's Wines and International Wines jointly and/or as a single integrated enterprise.

53.     Upon information and belief, Defendants frequently transfer employees among their store locations.

54.     Upon information and belief, Ehrlich's Wines employed approximately seven to eight (7-8) floor employees plus three (3) cashiers, not counting management, at any given time.

55.     Upon information and belief, International Wines employed approximately four (4) floor employees plus three (3) cashiers, not counting management, at any given time.

**Plaintiffs' Work for Defendants**

56.     **Plaintiff Bernardino Sierra** worked for Defendants from in or around November 2018 through in or around April or May 2020 (the "Sierra Employment Period").

57.     Plaintiff Sierra worked at International Wines from November 2018 through April 2019 and at Ehrlich's Wines from August 2019 to the end of April 2020.

58.     At both stores, Plaintiff Sierra worked on the retail floor, re-stocking bottles, bringing inventory to the retail floor, helping other employees with clients, and assisting clients. Plaintiff Sierra also sometimes made deliveries on foot.

11

59.     Plaintiff Sierra initially began working at International Wines in November 2018 on an as-needed basis once or twice per week, for a total of between seven and fifteen (7-15) hours per week.

60.     In or around January 2019, Defendant K. Phillips offered Plaintiff Sierra a regular job at International Wines. At this time, Plaintiff Sierra worked two (2) days per week, ten (10) to twelve (12) hours per day, for a total between approximately twenty and twenty-two (20-22) hours per week. Plaintiff Sierra stopped working at International Wines in or around the end of April 2019.

61.     In or around August 2019, Plaintiff Sierra began working at Ehrlich's Wines.

62.     For the first two (2) or three (3) months at Ehrlich's Wines, Plaintiff Sierra typically worked the following schedule: Mondays and Thursdays from 9:00 am to 10:00 pm and Saturdays and Sundays from 9:00 am to 2:00 pm, for a total of approximately thirty-six (36) hours per week.

63.     Subsequently, for the remainder of the Sierra Employment Period, Plaintiff Sierra typically worked Monday and Thursdays from 12:00 pm to 10:00 pm, for a total of approximately twenty (20) hours per week.

64.     During the period that Plaintiff Sierra worked at International Wines, he was paid ten dollars ($10.00) per hour for all hours worked. For the first month that he worked at Ehrlich's Wines, he was paid ten dollars and fifty cents ($10.50) per hour for all hours worked. Subsequently, and for the remainder of the Sierra Employment Period, Plaintiff Sierra was paid eleven dollars ($11.00) per hour for all hours worked.

65.     Throughout the Sierra Employment Period, Plaintiff Sierra was paid in cash, which he received on a weekly basis with no paystub, wage statement or other breakdown of his hours worked, hourly rate(s) and any deductions from his wages.

12

66.     When Plaintiff Sierra worked at International Wines, Defendants did not provide a timeclock, time sheet or any other means for Plaintiff Sierra to track his hours worked. During this time, at the end of the week, Plaintiff Sierra was told by a manager, typically "Arturo," how many hours he had worked, which Plaintiff Sierra believed was based upon his schedule, when Plaintiff was paid his weekly wages.

67.     When Plaintiff Sierra worked at Ehrlich's Wines, he was required to track his time on a Point of Sale ("POS") time system. During this period, Plaintiff Sierra was required to punch out for his break, which typically lasted thirty (30) minutes; however, his breaks were frequently interrupted, particularly during the busy holiday season.

68.     **Plaintiff Regino Solis** worked for Defendants as a floor employee and assistant manager from approximately 1999 to 2007 at International Wines and from approximately 2012 through in or around April 2021 at Ehrlich's Wines (the "Solis Employment Period"). From 2007 to 2012, Plaintiff Solis worked for Defendants at Serendipity Wines, which is now closed.

69.     During the relevant time period, Plaintiff Solis worked as an assistant manager at Ehrlich's Wines. Plaintiff Solis's duties included assisting managers, tasting wines, assisting clients, working with vendors, performing inventory, making lists of items to order and placing orders, marking prices, working as a cashier, creating weekly schedules, and making deliveries. Plaintiff Solis at no time had the authority to hire or fire employees.

70.     From the beginning of the relevant time period to in or around April 2020, Plaintiff Solis worked six (6) days per week with Sundays or sometimes Mondays off.

71.     From the beginning of the relevant time period through in or around April 2020, Plaintiff Solis typically worked the following schedule: Mondays, Tuesdays and Wednesdays, from approximately 2:00 pm or 3:00 pm to approximately 12:00 midnight; Thursdays, Fridays,

Saturdays from 2:00 pm to 12:00 midnight; and Sundays, when he worked that day, from 12:00 noon to 9:00 pm. On average, Plaintiff Solis typically worked approximately fifty-seven (57) hours per week. During the holiday season, from around October through early January, Plaintiff Solis worked as many as sixty (60) hours per week. The store was typically less busy during August and September, during which time he typically worked fifty to fifty-five (50-55) hours per week.

72.     From April 2020 through the end of the Solis Employment Period, Plaintiff Solis typically worked six (6) days per week from approximately 10:00 am to between 5:00 pm and 6:00 pm, for a total of between approximately forty-two and forty-eight (42-48) hours per week.

73.     Throughout the Solis Employment Period, Plaintiff Solis was paid an hourly rate and at straight-time rates for all hours worked, including hours beyond forty (40) per week. At no time did Plaintiff Solis receive overtime premiums consisting of one and one-half (1.5) times his regular rate for hours worked beyond forty (40) per week.

74.     From 2014 through the end of the Solis Employment Period, Plaintiff Solis was paid thirteen dollars ($13.00) per hour for all hours worked, including hours beyond forty (40) per week.

75.     Throughout the Solis Employment Period, Plaintiff Solis was paid in cash. During portions of the Solis Employment Period, specifically from 2008 to 2012 and again from 2018 through the end of the Solis Employment Period, Plaintiff also received a paystub for a portion of his wages; however, at no time did Plaintiff Solis receive payments by check.

76.     When Plaintiff Solis received a paystub, the paystub typically showed fewer hours than he actually worked and a lower payment of wages than he actually received. Specifically, the paystubs typically showed wage payments between three hundred and four hundred dollars ($300.00-$400.00).  However, at all times Plaintiff Solis was paid in cash at straight-time rates for

all hours worked, with no distinction he was aware of between hours reflected on the paystubs and the additional hours he worked.

77.     Beginning in or around 2008, Plaintiff Solis received a portion of his wages in check and a portion in cash; previously, he was paid entirely in cash. During this period, Plaintiff Solis received approximately three hundred to four hundred dollars ($300-$400) by check and the remainder, typically between one hundred and three hundred dollars ($100-$300) in cash.

78.     Throughout the relevant time period, Plaintiff Solis tracked his hours through a Point of Sale ("POS") system, where he tracked the times he arrived and left as well as his lunch break, which was typically approximately thirty-five (35) minutes and was typically interrupted by work duties he was required to perform.

79.     Throughout the relevant time period, Defendants automatically deducted one (1) hour per shift from Plaintiff Solis's recorded hours. At times, most often on Sundays, Plaintiff Solis added an hour to his recorded hours in order that the POS showed the correct number of hours he worked, as he was typically too busy on these days to take his break.

**Defendants' Unlawful Corporate Policies**

80.     At times during the relevant time period, Defendants paid Plaintiffs hourly rates that fell below the statutory minimum wage. Plaintiffs have spoken with other employees of Defendants who likewise were paid less than the minimum wage for at least a portion of their employment. Defendants' failure to pay Plaintiffs overtime compensation of one and one-half (1.5) times their regular hourly rate for hours over forty (40) each week is a corporate policy of Defendants which applied to all employees throughout the relevant time period.

81.     Throughout the relevant time period, Defendants paid straight-time hourly rates, such that Plaintiff Solis was not paid overtime premiums when he worked in excess of forty (40)

hours per week. Plaintiff Solis has spoken with other employees of Defendants who likewise did not receive overtime premium compensation for hours worked in excess of forty (40) in a given workweek. Defendants' failure to pay Plaintiffs overtime compensation of one and one-half (1.5) times their regular hourly rate for hours over forty (40) each week is a corporate policy of Defendants which applied to all employees throughout the relevant time period

82.     Throughout the relevant time period, Defendants failed to pay Plaintiffs spread of hours premiums consisting of one (1) extra hour's pay at minimum wage when they worked in excess of ten (10) hours during a single workday. Plaintiffs have spoken with other employees of Defendants who likewise did not receive spread of hours premiums for workdays that exceeded ten (10) hours. Defendants' failure to pay Plaintiffs spread of hours premiums is a corporate policy of Defendants which applied to all employees throughout the relevant time period.

83.     Throughout the relevant time period, Defendants failed to provide Plaintiffs with accurate paystubs setting forth their hours worked, hourly rate(s), gross and net wages paid, and any deductions taken from their wages.

84.     At no time during the relevant time period did Plaintiffs receive a wage notice setting forth their hourly rate(s), payday, any credits or deductions used in calculating his wages, or employer contact information.

85.     Plaintiffs and the Collective Action and Class Members were all paid pursuant to the same corporate policies of Defendants, including failing to pay minimum wages, overtime premiums and spread of hours premiums.

86.     Plaintiffs were aware that these timekeeping, pay, and wage statement/wage notice practices applied to all non-exempt employees, based on their observations of and discussions with other non-exempt employees, who were likewise paid straight-time rates that sometimes fell below

the minimum wage and did not receive wage notices or accurate wage statements, if any.

87.    Throughout the relevant time period and, upon information and belief, continuing until today, Defendants have likewise employed other individuals like Plaintiffs in positions that require little skill and no capital investment.  Upon information and belief, such individuals were required to work for less than minimum wage and were not paid time and one-half their regular rate when working in excess of forty (40) hours per week.

88.    Upon information and belief, throughout the relevant time period and continuing until today, Defendants failed to maintain accurate and sufficient time and payroll records or provide such records to employees.

**FIRST CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID MINIMUM WAGE**
**(Brought on Behalf of Plaintiffs and the Collective Action Members)**

89.    Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

90.    By failing to pay minimum wage for all hours worked, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 206 and 215(a)(2).

91.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

92.    Defendants' failure to pay minimum wages for all hours worked caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon. Therefore, Plaintiffs and the Collective Action Members are entitled to recover from Defendants their full unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated

damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
## FAIR LABOR STANDARDS ACT – UNPAID OVERTIME
### (Brought on Behalf of Plaintiff Solis and the Collective Action Members)

93.      Plaintiff Solis, on behalf of himself and the Collective Action Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

94.      By failing to pay overtime at a rate not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

95.      The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

96.      Defendants' failure to pay overtime caused Plaintiff and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiff and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

## THIRD CAUSE OF ACTION
## NEW YORK LABOR LAW – UNPAID MINIMUM WAGE
### (Brought on Behalf of Plaintiffs and the Class Members)

97.      Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

98.     Defendants willfully violated Plaintiffs' and Class Members' rights by failing to pay minimum wage for all hours worked, in violation of the NYLL and regulations promulgated thereunder.

99.     Defendants' failure to pay minimum wage for all hours worked caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon. Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**FOURTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiff Solis and the Class Members)**

100.    Plaintiff Solis, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

101.    Defendants willfully violated Plaintiff Solis's and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half (1.5) times the regular rate of pay for hours worked in excess of 40 each week, in violation of the NYLL and regulations promulgated thereunder.

102.    Defendants' failure to pay overtime premium compensation caused Plaintiff Solis and the Class Members to suffer loss of wages and interest thereon.  Plaintiff Solis and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**FIFTH CAUSE OF ACTION**
**NEW YORK LABOR LAW - FAILURE TO PAY WAGES**
**(Brought on Behalf of Plaintiffs and the Class Members)**

103.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

104.    Pursuant to NYLL § 191 and the cases interpreting same, workers such as Plaintiffs and the Class Members are entitled to be paid all their weekly wages "not later than seven calendar days after the end of the week in which wages are earned." Thus, Defendants violated NYLL § 191 by failing to pay Plaintiffs and the Class Members all of their wages earned within the week such wages were due.

105.    Pursuant to NYLL § 193, "No employer shall make any deduction from the wages of an employee," such as Plaintiffs and the Class Members, that is not otherwise authorized by law or by the employee.

106.    By withholding minimum wage and overtime compensation from Plaintiffs and the Class Members, pursuant to NYLL § 193 and the cases interpreting same, Defendants made unlawful deductions in wages owed to Plaintiff and the Class Members.

107.    Defendants' failure to pay Plaintiffs and the Class Members wages of any kind for several hours of work in certain weeks violated NYLL §§ 191 and 193.

108.    Defendants' failure to comply with NYLL §§ 191 and 193 caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon. Plaintiffs and the Class Members are entitled to recover from Defendants his unpaid wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq*.

## SIXTH CAUSE OF ACTION
## <u>NEW YORK LABOR LAW – UNPAID SPREAD-OF-HOURS PREMIUMS</u>
### (Brought on Behalf of Plaintiffs and the Class Members)

109. Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

110. Defendants willfully violated Plaintiffs' and the Class Members' rights by failing to pay compensation in an amount equal to one hour's pay at the relevant minimum wage in all instances where the Class Members worked either a split shift or more than ten (10) hours per day, in violation of the NYLL §§ 650, *et seq.*, and the regulations promulgated thereunder including N.Y. Comp. Code R. & Regs. tit. 12, §§ 137-1.7 (2010), 146-1.6 (2012).

111. Defendants' failure to pay spread-of-hours compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon. Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid spread-of-hours compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq*.

## SEVENTH CAUSE OF ACTION
## <u>NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE NOTICES</u>
### (Brought on Behalf of Plaintiffs and the Class Members)

112. Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

113. Defendants have willfully failed to supply Plaintiffs and the Class Members notice as required by Article 6, § 195(1), in English or in the language identified by Plaintiffs and the Class Members as their primary language, containing Plaintiffs' and Class Members' rate or rates

21

of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay, if applicable; the regular pay day designated by the employer in accordance with the NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer' the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

114.    Due to Defendant's violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants fifty dollars ($50.00) per employee for each day that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per employee, as provided for by NYLL, Article 6, §§ 190, *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

### EIGHTH CAUSE OF ACTION
### NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE STATEMENTS
#### (Brought on Behalf of Plaintiffs and the Class Members)

115.    Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

116.    Defendants have willfully failed to supply Plaintiffs and Class Members with an accurate statement of wages as required by NYLL, Article 6, § 195(3), containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime

rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

117.    Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants two hundred and fifty dollars ($250.00) per employee for each day that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per employee, as provided for by NYLL, Article 6, §§ 190, *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Collective Action Members and Class Members, respectfully request that this Court grant the following relief:

a.    Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members;

b.    Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and appointing Plaintiffs and their counsel to represent the Class;

c.    An order tolling the statute of limitations;

d.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

e.      An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.      An award of compensatory damages as a result of Defendants' failure to pay minimum wage and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g.      An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay minimum wages and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

h.      Fifty dollars ($50.00) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195(1) occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-b;

i.      Two hundred and fifty dollars ($250.00) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195(3) occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-d;

j.      An award of prejudgment and post-judgment interest;

k.      An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

l.      Such other and further relief as this Court deems just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial

by jury on all questions of fact raised by the complaint.

Dated:  New York, New York
        June 30, 2021

                                           Respectfully submitted,

                                           **PELTON GRAHAM LLC**

                                         By: _____

                                         Brent E. Pelton (BP 1055)
                                         pelton@peltongraham.com
                                         Taylor B. Graham (TG 9607)
                                         graham@peltongraham.com
                                         111 Broadway, Suite 1503
                                         New York, New York 10006
                                         Telephone: (212) 385-9700
                                         Facsimile: (212) 385-0800

                                         *Attorneys for Plaintiffs and the putative*
                                         *FLSA Collective and Class*

25

**Notice of Shareholder Liability for Services Rendered
Pursuant to § 630 of the Business Corporation Law of New York**

Pursuant to the provisions of § 630 of the Business Corporation Law of New York ("NYBCL"), the ten (10) largest shareholders of **JOAN BERTOLI INC. and 1996 CORP.** are hereby notified that the plaintiffs in this matter, individually and on behalf of the putative FLSA collective and the Class they seek to represent, intend to enforce your personal liability, as the ten (10) largest shareholders of **JOAN BERTOLI INC. and 1996 CORP.** and charge you with indebtedness of said corporations to the plaintiffs for services performed for the corporations as employees during the six (6) year period preceding the filing of the complaint.

Services for the above-referenced corporations concluded for Plaintiffs within the past 180 days.

Dated:  June 30, 2021

_____
Brent. E. Pelton, Esq.

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Joan Bertoli Inc. d/b/a New Ehrlich Wines & Liquor, 1996 Corporation d/b/a International Wine & Spirits, and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and minimum wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct.  I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.  I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees.  I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first.  I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf.  I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

DocuSigned by:

EFA97698F0364D7...

Signature

Bernardino Sierra
_____

Printed Name

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal en mi nombre y representación en contra de Joan Bertoli Inc. d/b/a New Ehrlich Wines & Liquor, 1996 Corporation d/b/a International Wine & Spirits y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados para que me sean pagados las horas extras y los salarios mínimos tal como lo requieren las normas estatales y/o federales e igualmente autorizo la presentación de este consentimiento en la acción(es) con el fin de debatir la conducta ilegal. Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que, si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos inicialmente de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

DocuSigned by:

EFA97698F0364D7...

Firma

Bernardino Sierra
_____

Nombre Escrito

This is a complete and accurate translation of the English "Consent to Become a Party Plaintiff" form above.

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Joan Bertoli Inc. d/b/a New Ehrlich Wines & Liquor, 1996 Corporation d/b/a International Wine & Spirits, and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and minimum wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

_____
Signature

_____
Printed Name

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal en mi nombre y representación en contra de Joan Bertoli Inc. d/b/a New Ehrlich Wines & Liquor, 1996 Corporation d/b/a International Wine & Spirits y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados para que me sean pagados las horas extras y los salarios mínimos tal como lo requieren las normas estatales y/o federales e igualmente autorizo la presentación de este consentimiento en la acción(es) con el fin de debatir la conducta ilegal. Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que, si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos inicialmente de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_____
Firma

_____
Nombre Escrito

This is a complete and accurate translation of the English "Consent to Become a Party Plaintiff" form above.