**PELTON GRAHAM** LLC

ADVOCATES FOR JUSTICE

December 6, 2021

Brent E. Pelton, Esq.
Pelton@PeltonGraham.com

**VIA CM/ECF**

Hon. Gabriel W. Gorenstein
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:   *Sierra, et al. v. Joan Bertoli Inc., et al.*
             **No. 21-cv-5687 (GWG)**

Dear Judge Gorenstein:

      This office represents named plaintiffs Bernardino Sierra ("Sierra") and Regino Solis ("Solis" and, together with Sierra, the "Named Plaintiffs") and opt-in plaintiff Wilian Escalante ("Escalante" or the "Opt-in Plaintiff" and, collectively with the Named Plaintiffs, the "Plaintiffs"). We write, jointly with counsel for Joan Bertoli Inc. d/b/a Ehrlich's Wines & Spirits ("Erhlich's Wines & Spirits"), 1996 Corp. d/b/a International Wines ("International Wines"), Joan Bertoli and Katiuscia Phillips-Paindelli[1] (collectively, "Defendants")[2], pursuant to the Fair Labor Standards Act ("FLSA"), the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) and the Court's November 9, 2021 Order. (Dkt. No. 25). Counsel for the parties respectfully submit that the negotiated Settlement and Release Agreement (attached as **Exhibit A** to the Affidavit of Brent E. Pelton, Esq.) constitutes a fair and reasonable compromise of this matter which should be approved by the Court.

**I.    Procedural History and Plaintiffs' Allegations**

      The Named Plaintiffs commenced this Action by filing a Class & Collective Action Complaint against Defendants in this Court on June 30, 2021. (Dkt. No. 1 (the "Complaint")). Defendants filed their Answer to the Complaint on August 21, 2021, denying all material allegations. (Dkt. No. 19 (the "Answer")).

      On August 4, 2021, pursuant to the SDNY Pilot Program for FLSA cases, this matter was referred to mediation. (Mediation Referral Order, Dkt. No. 16). Pursuant to the Mediation Referral Order, the parties exchanged discovery including Earnings Statements, schedules, and pay ledgers. Plaintiffs also provided Defendants with a damages computation in advance of the mediation.

---

[1] Identified in the Complaint and caption as "Katia Phillips."
[2] Defendant Patrick Phillips never responded to the Complaint and is not a party to the Settlement Agreement. Accordingly, Plaintiffs will file a Notice of Voluntary Dismissal of their claims against Patrick Phillips, pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i).

Magistrate Judge Gabriel W. Gorenstein
FLSA Settlement Fairness Letter
Page **2** of **7**

On October 26, 2021, the parties participated in a mediation before the Court-referred mediator, M. Salman Ravala, Esq. The parties reached a settlement in principle at that time. (Pelton Aff. ¶ 11).

Over the following weeks, the Parties finalized the terms of the settlement and drafted and executed the Settlement and Release Agreement (the "Settlement Agreement") attached as **Exhibit A**. The Settlement Agreement, the retainer agreements, as well as the mediation proceedings, have been translated into Spanish for each of the Plaintiffs by Belinda Herazo, whose Declaration detailing her translation work is attached as **Exhibit B**.

## II.     The Settlement Accounts for Litigation Risk

Plaintiffs allege to have worked at two (2) wine and spirits retail establishments owned, operated and managed by Defendants: International Wines & Spirits located at 2903 Broadway, New York, NY 10025 ("International Wines") and Ehrlich's Wines & Spirits located at 222 Amsterdam Avenue, New York, NY 10023 ("Ehrlich's Wines"). Plaintiff Sierra alleges to have worked for Defendants as a floor/stock employee at both locations; Plaintiff Solis alleges to have worked for Defendants as an assistant manager at Ehrlich Wines and, prior to the NYLL limitations period, as a floor/stock employee at International Wines; and Plaintiff Escalante alleges to have worked for Defendants as a floor/stock employee, delivery employee and cashier at Ehrlich's Wines.

Plaintiffs Sierra and Escalante alleged that they worked for Defendants on a part-time basis, typically between twenty (20) and thirty-six (36) hours per week, for which they were paid an hourly rate that at all times fell below the correct New York statutory minimum wage. Plaintiff Solis alleges that he worked full-time for Defendants, well in excess of forty (40) hours per week up to sixty (60) hours during busy holiday periods, for which he was paid a fixed salary that fell below the New York statutory minimum wage and did not provide overtime premiums. Plaintiffs also allege that they did not receive spread of hours premiums, did not receive all wages owed to them in a timely fashion, and did not receive proper wage notices and wage statements per the requirements of NYLL §§ 195(1)(a), 195(3).

Defendants assert that Plaintiffs' allegations of hours worked are heavily inflated. For example, Defendants claim that a review of 93 weeks of time records evidence that approximately 21.5% of the time Plaintiff Solis worked a range of only 20 to 31 hours per week, that a small sampling of Plaintiff Sierra's time records evidence an average of only 19.57 hours per week, and a 51 week sampling of Plaintiff Escalante's time records evidence an average of only 23.13 hours worked per week.

Moreover, Defendants assert that if Ehrlich's Wine & Spirits and International Wines were found to be joint employers (which Defendants deny) of Plaintiff Solis, that this alleged joint employer relationship would prohibit Plaintiff Solis from being eligible to receive a wage notice penalty because his alleged employment would have started well before the Wage Theft Prevention

Act went into effect. *See Kim v. Kum Gang, Inc.*, 2015 WL 2222438, 31-32 (S.D.N.Y. 2015)(finding that NYLL § 195 does not apply retroactively) (collecting cases). In addition, to the extent there was any exposure for the alleged wage statement violation, Defendants assert that the penalty for such an alleged violation is capped at $2,500.00 for Plaintiff Solis because if assuming *arguendo* that such an alleged violation existed, it would have accrued up to that maximum amount prior to 2014, which is when the statutory maximum was increased to $5,000.00. *See Villar v. Prana Hospitality, Inc.*, 2019 WL 1387412, 10 (S.D.N.Y. 2019) (awarding the statutory maximum of $2,500.00 for wage statement violations because that was the statutory penalty at the time the violations took place)

Throughout the litigation, there were several disputed issues of fact and law. During pre-mediation discovery, Defendants provided Plaintiffs with certain handwritten weekly pay ledgers containing weekly pay totals and some hours worked totals. Based upon these records, as discussed above, Defendants assert that Plaintiffs did not work the time periods and hours alleged in the Complaint. Plaintiffs, in turn, maintain that the records are incomplete and do not include any information for Plaintiffs' employment at International Wines. While Plaintiffs believe that a factfinder would credit their testimony over Defendants, Plaintiffs recognize the risk they would face at trial in light of Defendants' records.

In connection with Plaintiffs' pre-mediation disclosures, Plaintiffs created a damages analysis based upon their best recollection of their hours worked and wages paid. (Pelton Aff. ¶ 9). In total, as of October 19, 2021, when Plaintiffs exchanged their damages calculation in advance of the mediation, Plaintiffs' damages analysis calculated $38,796.25 in unpaid minimum wage, $29,432.00 in unpaid overtime, $16,613.25 in unpaid spread of hours premiums, and $30,000.00 in wage statement and wage notice violations for a grand total of $114,841.50 plus liquidated damages and prejudgment interest.

Although there is a possibility that Plaintiffs could recover higher damages if the case proceeded to trial, there is also the possibility that they would receive much lower damages, or nothing at all. As mentioned above, the Parties have disputes as to the facts and merits of Plaintiffs' claims, particularly as to time and pay records produced by Defendants. Accordingly, Plaintiffs prefer to settle now for an amount that they would be guaranteed to receive under the terms of the settlement then take the risk that even if they are successful, they are awarded a lower amount then agreed to in this settlement.

The parties believe that the settlement amount (i.e., $82,500.00) is a fair recovery based on the risks associated with establishing Defendants' liability and the calculated damages as well as the risks associated with proceeding to trial, as it represents 97% of the unpaid wage total that Plaintiffs, themselves, alleged are owed based on their own calculations.

### III. Settlement Terms

As set forth in the attached Settlement Agreement, the parties have agreed to settle this action for a total settlement amount of $82,500.00 (the "Settlement Amount"). Of the Settlement

Amount, $28,146.49 is payable to Plaintiffs' counsel (consisting of $969.73 in expense reimbursements and $27,176.76 in attorneys' fees). The remaining $54,353.51 is payable directly to Plaintiffs (the "Net Settlement Amount").

Keeping in line with the trend in this Circuit following *Cheeks*, the parties have agreed to a wage-and-hour release for any and all wage and hour claims arising before Plaintiffs signed the Settlement Agreement. The parties also did not include a confidentiality provision and have specifically included language in the Settlement Agreement making it clear that nothing in the Settlement Agreement precludes the parties from truthfully communicating their experiences concerning the Action or Settlement.

The agreement includes a mutual non-disparagement provision between Plaintiffs and the individual Defendants. The parties recognize that Courts have held that broad one-sided non-disparagement provisions "can be contrary to public policy because they prevent the spread of information about FLSA actions to other workers (both employees of Defendants and others), who can then use that information to vindicate their statutory rights." *Gaspar v. Pers. Touch Moving, Inc.*, No. 13 Civ. 8187 (AJN), 2015 U.S. Dist. LEXIS 162243, *3 (S.D.N.Y. Dec. 3, 2015). However, not every non-disparagement clause in a FLSA settlement is *per se* objectionable. *See Lopez v. Nights of Cabiria LLC*, 96 F. Supp. 3d 170, 180 n.65 (S.D.N.Y. 2015). Here, the non-disparagement clause contained in this agreement is permissible for two reasons:

1) Initially, the non-disparagement provision is mutual and binds Plaintiffs and the individual Defendants. Following *Cheeks*, Courts have approved settlements containing mutual non-disparagement clauses. *See Sadana v. Park Li, Ltd.,* No. 15-CV-8772, 2015 U.S. Dist. LEXIS 19122, at *2-3 (S.D.N.Y. Feb. 17, 2016) (approving the inclusion of a mutual non-disparagement clause in a FLSA settlement agreement); *Caprile v. Harabel*, No. 14-CV-6386, 2015 U.S. Dist. LEXIS 127332 at *3 (S.D.N.Y. Sept. 17, 2015) (post *Cheeks* decision approving mutual non-disparagement clause but rejecting the inclusion of a confidentiality provision).

2) Moreover, in recognition of the public policy interest favoring the disclosure of information relating to this action, the non-disparagement clause contains a "carve-out" provision permitting the Parties to make truthful statements about their experience in this litigation. Courts have held that such a "carve-out" provision provides an equitable balance between Plaintiffs' rights under the FLSA, and Defendants' interest in preventing the dissemination of defamatory statements. *See Cionca v. Interactive Realty LLC*, No. 15-CV-05123, 2016 U.S. Dist. LEXIS 77372 at *8 (S.D.N.Y. July 10, 2016) (a clause which bars a plaintiff from making negative statements about a defendant "must include a carve-out for truthful statements about [a plaintiff's] experience in litigating [her] case."); *Lopez v. Poko-St. Anns L.P.,* No. 15-CV-4980, 2016 U.S. Dist. LEXIS 46862 at fn. 1 (S.D.N.Y. April 4, 2016) (approving bilateral non-disparagement clause containing a "carve-out" provision for truthful statements); *Panganiban v. Medex Diagnostic & Treatment Ctr. LLC,* No. 15-CV-2588, 2016 U.S. DIST LEXIS 29158 at * 6 (E.D.N.Y. Mar. 7, 2016) (approving reciprocal non-

disparagement clause with a "carve out" for truthful statements about [plaintiff's] experience litigating the FLSA action); *Cortes v. New Creators, Inc.*, No. 15 Civ. 5680, 2016 U.S. Dist. LEXIS 79757, *4 (S.D.N.Y. June 20, 2016) (approving non-disparagement clause that "includes the requisite 'carve-out' for truthful statements about plaintiffs' experience litigating this case").

The mutual non-disparagement clause is bolstered by additional provisions that permit either party to commence an action in the event of a breach of the agreement and to obtain reasonable attorneys' fees in the event that they prevail.

## IV. Plaintiffs' Attorney's Fees and Expenses

As set forth in the Affidavit of Brent E. Pelton, Esq., as of November 19, 2021, Plaintiffs' counsel has spent more than 108 hours in prosecuting and settling this matter, resulting in a lodestar of $26,157.92. *See* Pelton Decl. Ex. C. Plaintiffs' counsel has spent $969.73 in actual litigation costs. *Id.* at Ex. D. The portion of the settlement amount that Plaintiffs seek as attorneys' fees (i.e., $27,176.76) represents one-third (1/3) of the settlement amount, after subtracting the actual litigation costs, and represents a modest 1.04 multiplier of the lodestar amount and is consistent with what was agreed upon between the Plaintiffs and their counsel in their retainer agreement. *See* Ex. D.

The hourly billing rates utilized by Plaintiffs' counsel in calculating the lodestar have been approved in connection with recent wage and hour default judgments in the Eastern and Southern Districts of New York. *See Guinea v. Garrido Food Corp.*, No. 19-CV-5860 (BMC), 2020 U.S. Dist. LEXIS 5476, at *4-5 (E.D.N.Y. Jan. 11, 2020) (rates of "$350-$450 per hour for partner time, $250-$300 per hour for associate time, and $125-$175 per hour for paralegal time…are reasonable and consistent with rates allowed in this district."); *Campos v. BKUK 3 Corp.*, No. 18-cv-4036, Dkt. No. 156 (Aug. 10, 2021) (discussing and approving Pelton Graham's attorney and paralegal rates). Similar rates are within the range paid to attorneys of similar experience and professional focus in the Southern Districts of New York, including in FLSA/NYLL actions. *See, e.g.*, *Guallpa v. NY Pro Signs, Inc.*, No. 11-cv-3133, 2014 U.S. Dist. LEXIS 77033, at *27-*29 (S.D.N.Y. May 27, 2014) (awarding $300-$600 per hour for experienced FLSA attorneys); *Viafara v. MCIZ Corp.*, No. 12-cv-7452, 2014 U.S. Dist. LEXIS 60695, at *39-*41 (S.D.N.Y. Apr. 30, 2014) (finding reasonable hourly rates of $550 for senior partner and $350 for attorney identified as "counsel").

Accordingly, Plaintiffs' counsel submits that the attorney's fees component of the settlement is fair and reasonable.

## V. The Parties Believe that the Settlement Is Fair and Reasonable

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Cheeks*, *supra*; *Wolinsky v. Scholastic, Inc.* 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not

in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc.*, No. 11-cv-0529, 2013 U.S. Dist. LEXIS 20543, at *8 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig.*, No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-cv-86, 2008 U.S. Dist. LEXIS 20786 at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food,* 679 F.2d at 1354). Although the FLSA places "limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver," *Wolinsky*, 900 F. Supp. 2d at 335 (alteration in original) (internal quotation marks omitted), "these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here." *Cisneros v. Schnipper Restaurant LLC*, No. 13-cv-6266, 2014 U.S. Dist. LEXIS 2111, *3 (S.D.N.Y. Jan. 8, 2014).

Here, there is no question that the settlement did not come about because of "overreaching" by the employer. To the contrary, the settlement was the result of vigorous arm's-length negotiations, including a mediation session before a neutral third-party referred by the Court and extended discussions and discovery that took place over the course of several months. The parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation. The negotiated settlement is fair and reasonable when considered in the context of the litigation risks faced by Plaintiffs, including disputed merits issues. Due to disputed issues of fact, the parties would likely need to engage in further formal discovery including depositions, as well as motion practice including conditional collective and class certification, which would consume a tremendous amount of time and resources. Rather than move forward with lengthy and costly litigation, settlement at this stage of the case unquestionably constitutes the most efficient and effective conclusion to this litigation.

* * * * *

As demonstrated above, the settlement is a result of substantial negotiations and compromise by both parties. The parties believe that the settlement is completely fair, reasonable, and adequate to the Plaintiffs and respectfully request that the Court approve the Settlement Agreement.

We appreciate Your Honor's attention to this matter. Please contact the undersigned counsel for the parties should you have any questions regarding this submission.

Respectfully submitted,

Magistrate Judge Gabriel W. Gorenstein
FLSA Settlement Fairness Letter
Page **7** of **7**

| | |
|---|---|
| By: __/s Brent E. Pelton_____ | By: _/s Matthew Cohen_____ |
| Brent E. Pelton, Esq. | Matthew E. Cohen, Esq. |
| Taylor B. Graham, Esq. | Saranicole Duaban, Esq. |
| PELTON GRAHAM LLC | Kaufman, Dolowich & Voluck LLP |
| 111 Broadway, Suite 1503 | 135 Crossways Park Drive, Suite 201 |
| New York, NY 10006 | Woodbury, New York 11797 |
| *Attorneys for Plaintiffs* | *Attorneys for Defendants* |

cc:     All counsel (via ECF)

www.PeltonGraham.com